**CAPITOL VIAL, INC. and Capitol Vial of Alabama, Inc., Plaintiffs,**

v.

**WEBER SCIENTIFIC, Defendant.**

**Civil Action No. 97–T–712–E.**

United States District Court,
M.D. Alabama,
Eastern Division.

June 4, 1997.

J. David Pugh, Bradley, Arant, Rose & White, Birmingham, AL, for plaintiffs.

C. Lee Reeves, Wilson F. Green, Sirote & Permutt, Birmingham, AL, for defendant.

### MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

This action is now before the court on the motion filed by defendant Weber Scientific, Inc. on May 2, 1997, to compel arbitration and stay judicial proceedings pursuant to the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 3, 4. The court heard oral argument on the motion on June 3, 1997. For the following reasons, the motion will be granted.

**I.**

Beginning in 1994, the principal of Weber Scientific, Mr. Fred Weber, and the principal of Capitol Vial, Inc. (CVI), Mr. Robert Abrams, exchanged correspondence for several months in which they each contributed to the drafting of an agreement for Capitol Vial of Alabama, Inc. (CV of Alabama), a wholly-owned subsidiary of CVI, to manufacture, and for Weber to purchase and distribute, plastic tubing sterilized by process and filled with sterile solution. An agreement memorializing the final terms of the agreement reached by Weber and Abrams, who are both non-attorneys, was finalized and signed by them on January 30, 1995.[1] The disagreement between the parties revolves around two passages in the paragraph numbered 3 in the document, governing the term or duration of the agreement, and one passage in the paragraph numbered 5, entitled "Limited Warranty." The first passage in paragraph 3 states that "The term year of the Agreement begins sixty (60) days after written approval by the Manufacturer confirming that the product has passed all development tests." The correspondence submitted to the court suggests that this clause was included by Weber, presumably for its own protection. After some discussion of the conditions for renewal of the initial two-year period of the agreement, and a recitation of the parties' intentions to apply their best efforts to make the agreement successful, follows this statement: "If there is no agreement as to termination between the parties, or any dispute relative to price or any other matter, it should be submitted to arbitration." Finally, the limited warranty states that "It is understood and agreed upon that Capitol Vial is responsible for and will make every reasonable effort to develop and consistently manufacture this product to high quality recognized industry standards, with an objective of none or negligible product defects." The paragraph goes on to describe an allowance for up to 5% defects on shipped vials, credit terms for defects, and so forth. The agreement further recites that the price

1. The heading of the document states that the agreement was "made as of February 1, 1995, by and between Weber Scientific (Distributor) ... and Capitol Vial, Inc. (Manufacturer)."

per vial would remain firm for two years starting February 1, 1995, and that if either company sells its business, "the contract is binding on the new purchaser."

This very short document (2 pages) served as the basis for considerable business between the parties until November 1996, when CVI sought an increase in the price from Weber, to become effective for the year commencing February 1, 1997—exactly two years from the date of the initial agreement. Weber challenged the validity of the request under the contract terms, and submitted the dispute to arbitration according to the clause in paragraph 3 of the contract. In its response to the arbitration demand, CVI requested that the arbitrator find in its favor, and rule that its proposed higher price be adopted, as "called for by the parties' agreement ('Distribution Agreement'), for the year commencing February 1, 1997." CVI subsequently withdrew its request for a price increase, and entered a stipulation of settlement with Weber to that effect, executed on February 4, 1997. As a result, the arbitrator entered a consent award based on the terms of that settlement. CVI never challenged the authority of the arbitrator to hear the dispute between the parties, or the validity of the arbitration clause in the contract in general.

On April 2, 1997, after having sold millions of vials to Weber, but having recalled or rejected about half a million others for not being up to standard, CVI wrote to Weber, saying that the disposable dilution vial had not passed all development tests, and that CVI would be unable to manufacture the vials to standard, and so CVI "will be unable to provide ... the written approval necessary to initiate the agreement." Simultaneously, on April 3, 1997, CVI filed a declaratory judgment action in the Circuit Court of Lee County, Alabama, seeking a declaration that the agreement between the parties had never gone into effect because of a failure of a condition precedent, and that CVI had no continuing duties towards Weber. On April 16, 1997, Weber served a demand for arbitration upon CVI, as it had done once before, now claiming breach of contract. It then removed the Lee County action to this court

on May 2, 1997, and moved the court to stay proceedings and compel arbitration. Meanwhile, on May 1, 1997, CVI submitted a verified petition to the Supreme Court of New York for Montgomery County, seeking an order staying the arbitration proceeding initiated in New York by Weber, on the basis that the agreement containing the arbitration clause never had gone into effect, and that the question of whether an enforceable contract exists between these parties was already before the Lee County, Alabama court when the arbitration demand was filed. It is not known whether the New York court took any action upon the petition.

## II.

■ CVI takes the position that *there is* no enforceable agreement between the parties because of a *failure* of a condition precedent to its execution, and that the dispute about the existence of an enforceable agreement is not itself arbitrable. Weber believes the contrary on both issues, and further asserts that CVI is bound to arbitrate under principles of collateral estoppel or waiver.

This dispute can be placed in context by the analysis of the Supreme Court in *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), which distinguished three different kinds of disputes between the parties before it: the substantive dispute over the contract; the dispute over the arbitrability of the substantive dispute; and the dispute over who should decide the second dispute, the court or the arbitrator. *Id.* at 941–43, 115 S.Ct. at 1923. Since no party here has challenged this court's authority to decide whether the substantive dispute about their contract should be arbitrated, only the second type of dispute is now before the court. That is, unless the court were to decide that the substantive dispute, here involving whether there is a condition precedent to the enforceability of the parties' respective contractual obligations, is not arbitrable, it would never address that dispute, instead referring it to the arbitrator.

In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Court held that

under the FAA, a charge of fraud in the inducement of a contract containing an arbitration clause broad enough to encompass such a charge must be heard by the arbitrator. The arbitration clause is thus severable from the contract as a whole. The federal court should hear only "issues relating to the making and performance of the agreement to arbitrate" itself, such as fraud in the inducement of the arbitration clause. *Id.* at 404, 87 S.Ct. at 1806; *Coleman v. Prudential Bache Secs., Inc.,* 802 F.2d 1350, 1352 (11th Cir. 1986). Courts consistently have since held that issues relating to the making and performance of a contract as a whole, not specific to the arbitration clause or agreement,[2] should be heard by the arbitrator. It has also been made abundantly clear, as in *First Options,* that first attention must be paid, according to state law of contracts, to giving effect to the clear and express intentions of the contracting parties themselves. *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989). Thus, parties could agree to submit a particular issue, including, for example, who should decide whether a substantive issue is arbitrable, to the arbitrator. *See First Options,* 514 U.S. at 943–45, 115 S.Ct. at 1924.

■ Because of the "national policy favoring arbitration," *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 54–56, 115 S.Ct. 1212, 1215, 131 L.Ed.2d 76 (1995) (quoting *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984)), arbitration clauses should be read liberally, such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765

(1983). Specifically, the court's research has uncovered only cases holding or supporting the proposition that a dispute over a condition precedent to a contract containing an arbitration clause that is broadly enough worded to encompass such a dispute should be arbitrated. *See, e.g., Schacht v. Beacon Ins. Co.,* 742 F.2d 386, 390–91 (7th Cir.1984); *Municipal Energy Agency v. Big Rivers Elec. Corp.,* 804 F.2d 338, 342–43 (5th Cir. 1986); *Integrated Health Servs., Inc., v. Kirschenbaum,* 1996 WL 131496 at *5 (N.D.Ill.); *Miner Enters., Inc. v. Adidas AG,* 1995 WL 708570 at *5 (N.D.Ill.).

The *Municipal Energy* case, in particular, has strong parallels to this case. There, a short-term agreement which set conditions precedent upon its own extension into a subsequent ten-year agreement, and otherwise provided for its own termination, included a very broad arbitration clause. When the agreement arguably terminated, the court, relying on *Prima Paint,* ruled that the arbitration clause had not terminated with it, but was severable and governed disputes about the termination itself.

The arbitration clause at issue here states that, "If there is no agreement as to termination between the parties, or any dispute relative to price or any other matter," the parties should arbitrate. This clause is certainly broad enough to cover a dispute over whether the distribution agreement between the parties should terminate after the initial two-year period, or continue. CVI's protestations notwithstanding, there is no stated condition precedent, in the contract, to the operation of the arbitration clause itself. *Prima Paint* clearly governs here, and this dispute, if it otherwise satisfies the conditions set out in the FAA, must be arbitrated.

---

**2.** Of course, as in all things, there is some gray area here, because certain disputes will not so easily be assignable as relating to either the whole contract or solely the arbitration clause, and certain kinds of fundamental challenges to the very existence of an agreement between the parties must strike at the validity of arbitration clauses within such agreements. There are cases, for example, where challenges were brought to the authority of purported agents to bind principals to agreements containing arbitration clauses, where the courts have held that the

existence of the contract is for the court to decide despite broad wording in those arbitration clauses. *See, e.g., Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.,* 925 F.2d 1136 (9th Cir.1991); *Smith Wilson Co. v. Trading & Dev. Establishment,* 744 F.Supp. 14 (D.D.C.1990). It cannot seriously be contended that this case presents such a basic challenge to the formation of an agreement, where, for two years, the parties voluntarily operated under and abided by a written, signed agreement they jointly prepared.

### III.

CVI has not challenged Weber's arguments that CV of Alabama, to the extent it plays any role in this dispute, must also join the arbitration. The court finds Weber's contentions that CV of Alabama is either a third-party beneficiary of the contract between CVI and Weber, or an agent of CVI under that contract, and thus bound to arbitrate with Weber under principles of equitable estoppel, entirely credible. *Roberson v. The Money Tree of Ala., Inc.,* 954 F.Supp. 1519 (M.D.Ala.1997).

Furthermore, CVI does not dispute that the transactions between it and Weber constitute interstate commerce in fact, as required by the FAA. *Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).

### IV.

Because the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," it will "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C.A. § 4.[3]

An appropriate judgment will be entered.

---

**3.** The court need not even reach the issue of collateral estoppel or waiver based on CVI's prior voluntary participation in an arbitration in accordance with the arbitration clause in its agreement with Weber.