RAINBOW INVESTMENTS,
INC., Plaintiff,

v.

SUPER 8 MOTELS, INC., Defendant.

Civil Action No. 97–T–824–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Aug. 8, 1997.

J. Michael Williams, Sr., Auburn, AL, for Rainbow Investments, Inc.

Robin Garrett Laurie, Balch & Bingham, Montgomery, AL, for Super 8 Motels, Inc.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Plaintiff Rainbow Investments, Inc., brought suit against defendant Super 8 Motels, Inc. in the circuit court of Lee County, Alabama on March 10, 1997.[1] The complaint, which arose out of steps the parties took towards executing a franchise agreement, included counts for breach of an oral contract, conversion, unjust enrichment, and various types of fraud, all under Alabama state law. Super 8 Motels noticed removal of the action to this court on May 23, 1997, on the basis of this court's diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441. Super 8 Motels subsequently filed a motion, on June 11, 1997, to stay judicial proceedings and

---

1. The original suit named only unknown, fictitious defendants, but was subsequently amended to substitute defendant Super 8 Motels, Inc., for one of those fictitious defendants.

compel arbitration of all Rainbow Investments' claims against it, pursuant to the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 3, 4. That motion is now before the court.

## I.  BACKGROUND

This is a story simply told. According to the facts alleged in the complaint and in Rainbow Investments' brief in response to Super 8 Motels' motion to stay and compel, on or about April 4, 1995, certain individuals representing Super 8 Motels and Rainbow Investments met to discuss the terms of, and to execute, a franchise agreement between those parties. The agreement would permit Rainbow Investments to operate motel property it already owned, upon completion of certain repairs and improvements to be specified in a 'punch list,' under the name 'Super 8 Motels.' Rainbow Investments delivered a check in the amount of $21,000 to Super 8 Motels and signed the franchise agreement, upon its oral understanding that this amount would be returned in full should Rainbow Investments find the punch list unacceptable or prohibitively expensive, and that no further obligation would exist between the parties in that eventuality.[2] The punch list was to be attached as a schedule to the franchise agreement. Shortly thereafter, Rainbow Investments received a copy of the punch-list summary showing it would take an initial outlay of approximately $168,000 to conform to the specifications for operating its property as a Super 8 Motels franchisee. Rainbow Investments balked at spending this amount, and immediately sought the return of its $21,000. Rather than return the check, Super 8 Motels negotiated and deposited it, claiming it as a nonrefundable application-and-franchise fee, in accordance with the terms and conditions of the franchise contract[3] signed and executed by the parties contemporaneously with the payment by Rainbow Investments.[4] The franchise agreement contains an arbitration clause in

¶ 17.6.1, which reads, in relevant part, as follows:

> "We and you will submit any controversy or claim relating to the offer, sale, negotiation, performance, interpretation, enforcement, termination and validity of this Agreement and all related agreements between you ... and us ... to binding arbitration before the American Arbitration Association under its commercial arbitration rules.... The scope of this agreement to arbitrate includes claims against your and our officers, directors, agents and employees, claims arising under any federal or state law or regulation, and claims by your employees, agents, shareholders, partners, [etc.] against us. This arbitration will be the sole and exclusive remedy for any such controversy or claim."

Further on, in ¶ 17.6.3, the agreement states that the "arbitration provision shall be self-executing and shall remain in full force and effect after the termination of this Agreement," and in ¶ 17.6.4, that no "arbitration under the Agreement shall include ... any person other than you or us, or persons claiming by or through you and us." Finally, ¶ 17.6.5 consists of a waiver of the right to jury trial of any issue that is properly the subject of arbitration under the agreement.

Rainbow Investments, in bringing this suit, seeks both compensatory and punitive damages.

## II.  DISCUSSION

Rainbow Investments raises several arguments why this court should not issue an order compelling it to arbitrate its claims against Super 8 Motels. All of these arguments, as shall be shown, are essentially the same in character and effect.

First, Rainbow Investments claims the franchise agreement, presumably including the arbitration clause, was invalidated due to fraud in its inducement, or execution. Rain-

---

**2.**  Rainbow Investments also claims that it received reassurances at that meeting that it would be neither difficult nor expensive for it to bring its property up to standard by following the punch list.

**3.**  Paragraph 6 of the franchise agreement reads: "We should receive from you a non-refundable

Application Fee of $1,000.00. You will pay us a non-refundable Initial Fee in the amount of $20,-000.00, when you sign this Agreement, which is fully earned when we sign this Agreement."

**4.**  At first Rainbow Investments claimed not to have entered into or signed any agreement or document. This turned out not to be true.

bow Investments' position is that it signed the agreement and paid the initial fee to Super 8 Motels in justifiable reliance upon Super 8 Motels' representation that Rainbow Investments retained the right to disaffirm or revoke the agreement and obtain a refund of the fee paid should the punch list, when disclosed, prove unacceptable in its sole judgment.

Next, Rainbow Investments argues that because the punch list was delivered only after the signing of the agreement, it constituted a material alteration or change in the essential terms of the agreement, either making the agreement itself null and void, or creating a novation that releases it from obligations under the original contract (including the obligation to arbitrate disputes relating to the contract).

Rainbow Investments further argues that the agreement never went into effect due to failure of a condition precedent—namely, its satisfaction with, or the completion of repairs in accordance with, the punch list. Rainbow Investments also claims that the contract was void because there was no 'meeting of the minds' and because essential terms were lacking. Finally, Rainbow Investments argues, somewhat disingenuously, that its claims cannot 'relate to' the contract, as required in the contract's arbitration clause, since, in its view, the contract never became operative.[5]

### A.

Rainbow Investments points out, correctly, that whether a dispute is arbitrable is, generally, subject to judicial determination. Rainbow Investments also brings to the court's attention the substance of § 2 of the FAA, which states that it is for the court to decide whether an arbitration agreement is unenforceable because obtained by fraud, or because of other grounds that may exist at law or in equity for its revocation.[6]

Nonetheless, Rainbow Investments "aver[s] that there was not a valid contract or agreement between the parties and, thus, the arbitration clause included therein is not enforceable." Plaintiff's brief filed on July 11, 1997, at 4. This statement betrays perfect ignorance of the holding of *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), which was recently expounded upon by this court in *Capitol Vial, Inc. v. Weber Scientific*, 966 F.Supp. 1108 (M.D.Ala.1997), a copy of which opinion was furnished to the parties in this case at a scheduling conference in chambers, prior to submission of their briefs. There the court explained: "In *[Prima Paint]*, the Court held that under the FAA, a charge of fraud in the inducement of a contract containing an arbitration clause broad enough to encompass such a charge must be heard by the arbitrator. The arbitration clause is thus severable from the contract as a whole. The federal court should hear only 'issues relating to the making and performance of the agreement to arbitrate' itself, such as fraud in the inducement of the arbitration clause. *Id.* at 404, 87 S.Ct. at 1806; *Coleman v. Prudential Bache Secs., Inc.*, 802 F.2d 1350, 1352 (11th Cir.1986). Courts consistently have since held that issues relating to the making and performance of a contract as a whole, not specific to the arbitration clause or agreement, should be heard by the arbitrator." 966 F.Supp. at 1110–11.

The facts as alleged in the complaint filed by Rainbow Investments in no way or manner evince fraud in the execution of the arbitration clause itself. The court should not defer the question of arbitrability to an arbitrator merely because a party, with the desire to avoid arbitration, avers, for example, that the arbitration clause itself was fraudulently induced. The court must be presented with evidentiary facts that tend to show the existence of grounds at law or in

---

**5.** There is one sense, discussed later, in which a dispute over a contract may relate to it in such a way that a broadly-inclusive arbitration clause may not cover the dispute.

**6.** Section 2 provides:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

equity to support the revocation of the arbitration agreement. 9 U.S.C.A. § 2. In this regard, Rainbow Investments is entirely mistaken when it states that *"Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), reserved the right to the Court to invalidate contracts containing arbitration clauses 'upon such grounds as exist at law or in equity for the revocation of *any* contract.'" Plaintiff's brief, filed on July 11, 1997, at 9. In fact, as the Supreme Court reiterated in *Doctor's Assocs., Inc. v. Casarotto,* — U.S. —, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), *Allied–Bruce* restated what earlier Court decisions had established: that "States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate *an arbitration clause* 'upon such grounds as exist at law or in equity for the revocation of *any* contract.' 9 U.S.C. § 2 ([latter] emphasis added)." *Casarotto,* — U.S. at —, 116 S.Ct. at 1655 (quoting *Allied–Bruce,* 513 U.S. at 281, 115 S.Ct. at 843) (earlier emphasis added). In other words, these later Court decisions are entirely in accord with the *Prima Paint* distinction between a challenge to a whole contract, and a challenge to an arbitration clause within a contract. Rainbow Investments' claims all revolve around the argument that it never agreed to proceed with the franchise agreement or pay fees unless the punch list were acceptable. Rainbow Investments does not maintain that it never agreed to arbitrate disputes with Super 8 Motels, whatever may be its views about the range or type of disputes it agreed to arbitrate.

■ Nor does this case fall into that narrow, but hazily defined class of cases where not merely the enforceability, but the initial formation or existence of a contract, including a disputed arbitration clause, is legitimately brought into question, and must be decided by the court. As this court discussed in a footnote in *Capitol Vial,* "certain kinds of fundamental challenges to the very existence of an agreement between the parties must strike at the validity of arbitration clauses within such agreements." 966 F.Supp. at 1111 n. 2. For instance, in *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.,* 925 F.2d 1136 (9th Cir.1991), the court sustained a challenge to a motion to compel arbitration by a party who claimed that the signatory who entered into the agreement was not its authorized agent, and thus the arbitration clause in that agreement was not binding upon it. The Ninth Circuit Court of Appeals explained:

"[Defendant-Appellee] Shearson argues that *Prima Paint* extends to all challenges regarding the 'making' of a contract as opposed to the making of an arbitration clause....

"We do not read *Prima Paint* so broadly.... Despite the broad dicta ... suggesting that *Prima Paint* extends to all challenges to the making of a contract,' we read *Prima Paint* as limited to challenges seeking to avoid or rescind a contract—not to challenges going to the very existence of a contract that a party claims never to have agreed to. A contrary rule would lead to untenable results. Party A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature. Similarly, any citizen of Los Angeles could sign a contract on behalf of the city and Los Angeles would be required to submit to an arbitrator the question whether it was bound to the contract, even if its charter prevented it from engaging in any arbitration.

"Under this view, *Prima Paint* applies to 'voidable' contracts—those 'where one party was an infant, or where the contract was induced by fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract.' Restatement (Second) Contracts § 7 comment b (1981). If the dispute is within the scope of an arbitration agreement, an arbitrator may properly decide whether a contract is 'voidable' because the parties have agreed to arbitrate the dispute. But, because an arbitrator's jurisdiction is rooted in the agreement of the parties,' *George Day Constr. Co. v. United Bd. of Carpenters, Local 354,* 722 F.2d 1471, 1474 (9th Cir.1984) ..., a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an

agreement to arbitrate. Only a court can make that decision." [7]

*Id.* at 1140 (citations omitted).

Similarly, in *Cancanon v. Smith, Barney, Harris, Upham & Co.*, 805 F.2d 998 (1986), the Eleventh Circuit Court of Appeals affirmed the district court's order that certain state law fraud claims were not subject to arbitration, where the plaintiffs, who were not literate in the English language, were induced to enter into a brokerage agreement through fraud in the factum; that is, they were told by the bank's agent that the contract they were signing pertained to a money market account, when in fact it was an agreement to permit the bank to use their deposited funds to trade in commodities on their behalf and as their agent.

In such cases, a challenge to the validity of a whole contract directly and effectively challenges whether a party has agreed to arbitrate its claims *at all,* which is presumptively for the court, and not the arbitrator, to decide. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so. *AT & T Technologies [Inc. v. Communications Workers of Am.,* 475 U.S. 643,] 649, 106 S.Ct. [1415,] 1418–1419 [89 L.Ed.2d 648] [(1986)].... In this manner the law treats silence or ambiguity about the question *'who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question *'whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement'—for in respect to this latter question the law reverses the presumption.") (citations omitted).

■ The common feature of most, if not all, such cases is a viable claim of lack of assent to the contract, and by extension, the arbitration clause it contains. *See Matter of*

*Arbitration Between Nuclear Elec. Ins. Ltd. & Central Power and Light Co.,* 926 F.Supp. 428, 433–34 (S.D.N.Y.1996). The signed and witnessed signatures of officers of Rainbow Investments on the franchise agreement document, executed contemporaneously with delivery of the $21,000 check dated April 4, 1995, belie any such claim in this case. Rainbow Investments does not claim that its officers were in any manner led to believe that the document was something other than a franchise agreement, or that the signatures are not in fact those of its officers. *Contrast Chastain v. The Robinson–Humphrey Co.,* 957 F.2d 851, 855 (11th Cir.1992) ("*Prima Paint* has never been extended to require arbitrators to adjudicate a party's contention, *supported by substantial evidence,* that a contract never existed at all.") (emphasis added).

### B.

As for the scope of the arbitration agreement in effect between the parties, the language of the arbitration clause—"We and you will submit any controversy or claim relating to the offer, sale, negotiation, performance, interpretation, enforcement, termination and validity of this Agreement and all related agreements between you ... and us ... to binding arbitration"—is certainly broad enough to cover all of the claims and arguments advanced by Rainbow Investments, including: whether a separate, oral agreement existed; whether that oral agreement was breached by Super 8 Motels; whether the written franchise agreement was fraudulently procured; whether assent to the punch list was a condition precedent to the contract;[8] whether the punch list, when received, materially altered essential terms of the contract; whether the addition of the punch list to the contract created a novation; whether Rainbow Investments' claims relate to the contract; and even whether there was a 'meeting of the minds.'

7. Of course, a party who contests the making of a contract containing an arbitration provision may not be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate— but only once those contentions are "supported by substantial evidence." *Chastain v. The Robinson–Humphrey Co.,* 957 F.2d 851, 855 (11th Cir. 1992). Otherwise the opposite problem could

result: parties would be able to forestall arbitration and proceed to court merely by raising, or purporting to raise, threshold issues about the existence of a contract. This lawsuit may be an instance of that species.

8. *See Capitol Vial,* 966 F.Supp. at 1111–12, and cases cited therein.

Because the president of Rainbow Investments acknowledges in a sworn affidavit that he voluntarily signed what he knew to be a franchise agreement with Super 8 Motels, whatever Rainbow Investments means by 'meeting of the minds' here, it cannot mean the kind of failure to agree that would render void, *ab initio,* what otherwise is purported to be a contract between the parties. Restatement (Second) of Contracts § 17 cmt. b (1981); Corbin on Contracts §§ 4.12–4.13 (1993). If Rainbow *could* claim there was a failure of minds to meet in that sense, then, as discussed above, certainly the court would have to consider and rule on the claim.

However, in this region of the law, there are still gray areas to be traversed and murky waters to be navigated. There can be misrepresentations so extreme or fundamental as to prevent formation of a contract at all—for instance, where a party is reasonably led to believe "that he is not assenting to any contract or that he is assenting to a contract *entirely different* from the proposed contract." Restatement (Second) of Contracts § 163 cmt. a (1981).

Though there may be tough cases, the critical factor, in all cases, is the degree and nature of the divergence between the object of the challenging party's assent, and the actual bargain struck. The facts in this case cannot be portrayed in any manner suggesting that Rainbow Investments reasonably believed it gave its assent to a contract that was entirely different in character from the one it did, in fact, and manifestly, enter into. Also, a difficult case will arise only where "a party does not know or have reasonable opportunity to know of [the contract's] character or essential terms." § 163 cmt. a. Rainbow Investments never even suggests that it never had opportunity to read the franchise agreement and compare its terms to the ones orally represented. *See Lilley v. Gonzales,* 417 So.2d 161, 163 (Ala.1982) ("Gonzales's argument is premised upon a misconception of the time-honored phrase meeting of the minds.' It is true that there is no contract unless the parties assent to the same thing and in the same sense. But if one seeks to convey his meaning by expressions importing something different, or attaches to the proposition of the other a significance not authorized, whatever injury may result from the misunderstanding must be visited upon him.... Stated another way, the law of contracts is premised upon an objective rather than a subjective manifestation of intent approach.").

## III. CONCLUSION

Because the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue" and because the court is satisfied that the disputes at issue are subject to arbitration, it will "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C.A. § 4.

An appropriate judgment will be entered.