John L. STINSON, Plaintiff,

v.

AMERICA'S HOME PLACE, INC., etc., et al., Defendants.

No. Civ.A. 99-T-969-E.

United States District Court, M.D. Alabama, Eastern Division.

May 11, 2000.

G. Houston Howard, II, Howard, Dunn, Howard & Howard, Wetumpka, AL, Marrell J. McNeal, McNeal & Douglas, LLC, Auburn, AL, for plaintiffs.

William H. King, III, Lightfoot, Franklin & White, L.L.C., Birmingham, AL, W.F. Horsley, Emil F. Wright, Jr., Samford, Denson, Horsley, Pettey & Bridges, Opelika, AL, Richard E. Flowers, Richard E. Flowers, PC, Columbus, GA, for America's Home Place, Inc., a corporation, defendant.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff John L. Stinson filed this lawsuit in state court, seeking damages based his contract with the defendants for the construction, purchase, and financing of a home. He has named as defendants America's Home Place, Inc. (AHP), which contracted to build a home for Stinson; AHP building consultant Jeanetta Holcey; and Hilton Mortgage Corporation II, which was to provide the financing for Stinson's new home. Stinson bases his lawsuit on state common-law principles of tort and contract, including causes of action for fraudulent representation and suppression, negligence, and breach of contract. This case was properly removed to federal court on September 3, 1999, pursuant to 28 U.S.C.A. § 1446(b). The jurisdiction of this court has been properly invoked under 28 U.S.C.A. § 1332 (diversity of citizenship).

Currently before the court is a motion, filed by defendants AHP and Holcey on September 15, 1999, to compel arbitration of Stinson's claims against them as provided for in their contract, and to stay proceedings in this court. AHP and Holcey rely on 9 U.S.C.A. §§ 1 through 16, commonly known as the Federal Arbitration Act (FAA). Stinson advances several arguments in opposition to their motion: (1) the absence of certain necessary signatures rendered the contract invalid, (2) the arbitration clause was invalid because the designated arbitrator did not exist at the time of contract signing, (3) the contract was unconscionable, (4) enforcement of the arbitration clause would violate Stinson's seventh amendment right to a jury trial, (5) the claims asserted in this lawsuit exceed the scope of the arbitration clause, and (6) the contract containing the arbitration clause was replaced by a novation. For the reasons that follow, the court rejects each of these arguments, and concludes that arbitration is required in this case under the FAA.

## I. BACKGROUND

This lawsuit centers around a contract entered into by Stinson and AHP for the building and sale of a home. This contract, signed by Stinson and AHP building consultant Holcey on March 31, 1997, requires AHP to provide materials and labor to build a home to Stinson's specifications on a piece of property in Alabama owned by Stinson. The contract also sets forth the amounts of money that Stinson must pay in return for the home and for the financing of it.

A boilerplate, fill-in-the-blank contract presumably used by AHP for all its customers, the contract includes a number of other terms and conditions, including an arbitration clause at ¶ 32 that reads in pertinent part:

"It is mutually agreed that any unresolved disagreement arising out of this contract during the construction period, warranty period or thereafter must be submitted by Owner or by Contractor to National Academy of Conciliators for a binding arbitration. It is mutually agreed that any arbitration award shall have the same weight as a legal decision on any differences herein arising, and both parties agree that no further recourse of any kind may be sought after the arbitration award is rendered."

As with each other numbered paragraph in the contract, Stinson signed his initials next to the arbitration clause. However, both parties agree that, by the time Stinson signed his contract, the National Academy of Conciliators was no longer in existence.

Paragraph 37 of the contract requires that "[t]his agreement and any change orders are subject to being accepted by an officer or contractor." The contract also includes signature lines for the home owner, the building consultant, and for a corporate officer of AHP. Although Stinson and his building consultant Holcey signed in the appropriate places, the line for the corporate officer's signature remains blank.

On May 27, 1997, Holcey sent Stinson a six-page fax that included replacements for the first two pages of his contract. These two pages include blanks for the itemized and total price of the home and the closing costs. The replacement pages sent to Stinson on May 27, 1997, reflect a downward adjustment of these figures from those agreed upon in the March 31, 1997, contract.

Stinson filed this lawsuit in state court on August 5, 1999, asserting state-law theories of tort and contract to challenge an alleged discrepancy between the originally agreed-upon price of the home and the monthly payments that Stinson was ultimately required to make. This federal court now takes up the defendants' motion to compel arbitration and to stay proceedings in this court, filed on September 15, 1999. For the reasons that follow, the court concludes that this motion should be granted.

## II. DISCUSSION

The FAA makes enforceable a written arbitration provision in "a contract evidencing a transaction involving commerce." 9 U.S.C.A. § 2. Commerce is defined in the FAA as "commerce among the several states." 9 U.S.C.A. § 1. The requirement of interstate commerce is met here because AHP, a Georgia corporation, contracted with Stinson, an Alabama resident, to build a home for Stinson in Alabama, and because the materials used in the construction of the home traveled in interstate commerce.

■ Section 4 provides that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," a federal court should grant the petition. 9 U.S.C.A. § 4. As a general matter of federal policy, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 651, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (reviewing dispute arising under the Labor Management Relations Act); *see also Ruby–Collins, Inc. v. City of Huntsville, Alabama*, 748 F.2d 573, 576 (11th Cir.1984) ("[F]ederal policy requires that we construe arbitration clauses generously, resolving all doubts in favor of arbitration."); *Seaboard Coast Line Railroad Co. v. Trailer Train Co.*, 690 F.2d 1343, 1348 (11th Cir.1982) (same).

■ Despite the presumption favoring arbitration, however, § 2 of the FAA prohibits the enforcement of an arbitration clause that is invalid "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. In construing this section, the Supreme Court has stated that it "gives States [ ] method[s] for protecting consumers against unfair pressure to agree to a contract with an unwarranted arbitration provision." *Allied–Bruce Terminix v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 843, 130 L.Ed.2d 753 (1995). It is a cardinal principle of federal arbitration law that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies*, 475 U.S. at 648, 106 S.Ct. at 1418 (quoting *United Steelworkers v. Warrior & Gulf Navig. Co.*, 363 U.S. 574, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)).

## A. *Validity of the Contract*

Stinson first argues that the arbitration clause in his contract with AHP is not enforceable because the contract as a whole is invalid. He bases this argument on the fact that the contract, by its own terms, requires the signature of a corporate officer in order to be enforceable. Paragraph 37 of the contract provides, "This agreement and any change orders are subject to being accepted by an officer of the corporation." The signature section of the contract also includes a line clearly designated for the signature of a "corporate officer of [the] contractor." However, in Stinson's case, the only signatories of the contract were himself and Holcey, who is an agent but not a corporate officer of AHP; the signature line designated for a corporate officer remains blank. Therefore, Stinson contends that the whole contract, including its arbitration clause, is invalid.

In response, AHP and Holcey argue that it is the role of an arbitrator to resolve disputes such as this one, in which the validity of the contract as a whole, rather than just the arbitration clause, is at issue. The Supreme Court has held in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967), that, while a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit, challenges to the validity of the contract as whole must be presented to the arbitrator. *See also Rollins, Inc. v. Foster*, 991 F.Supp. 1426, 1431 (M.D.Ala.1998) (Thompson, J.); *Capitol Vial, Inc. v. Weber Scientific*, 966 F.Supp. 1108 (M.D.Ala.1997) (Thompson, J.); *Rainbow Investments, Inc. v. Super 8 Motels, Inc.*, 973 F.Supp. 1387, 1389 (M.D.Ala. 1997) (Thompson, J.) (all citing *Prima Paint* for this proposition of law). "Courts consistently have ... held that issues relating to the making and performance of a contract as a whole, not specific to the arbitration clause or agreement, should be heard by the arbitrator." *Rainbow Investments*, 973 F.Supp. at 1389.

While *Prima Paint* dealt only with the validity of a contract in light of fraudulent inducement claims, the same principal applies to other challenges to an arbitration clause, such as those based on allegations of forgery, mutual mistake, unconscionability, and impossibility. *See, e.g., Coleman v. Prudential Bache Sec., Inc.*, 802 F.2d 1350, 1352 (11th Cir.1986) ("Claims alleging unconscionability, coercion, or confusion in signing the agreement generally should be determined by an arbitrator because those issues go to the formation of the entire contract rather than to the issue of misrepresentation in the signing of the arbitration agreement.") (citations omitted); *see also Benoay v. Prudential–Bache Sec., Inc.*, 805 F.2d 1437, 1441 (11th Cir.1986); *Miller v. Drexel Burnham Lambert, Inc.*, 791 F.2d 850, 854 (11th Cir.1986).

At the same time, however, courts have found that some challenges that go to the 'existence' of the contract fall outside *Prima Paint*'s mandate and thus present an issue for the court, rather than the arbitrator, to decide. As this court discussed in a footnote in *Capitol Vial*, "certain kinds of fundamental challenges to the very existence of an agreement between the parties must strike at the validity of arbitration clauses within such agreements." 966 F.Supp. at 1111 n. 2. For instance, in *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136 (9th Cir.1991), the court sustained a challenge to a motion to compel arbitration by a party who claimed that the signatory who entered into the agreement was not its authorized agent, and thus the arbitration clause in that agreement was not binding upon it. The Ninth Circuit Court of Appeals explained:

"Despite the broad dicta ... suggesting that *Prima Paint* extends to 'all challenges to the making of a contract,' we read *Prima Paint* as limited to challenges seeking to avoid or rescind a contract—not to challenges going to the very existence of a contract that a party claims never to have agreed to...."

"Under this view, *Prima Paint* applies to 'voidable' contracts—those 'where one party was an infant, or where the contract was induced by fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract.' Restatement (Second) Contracts § 7 comment b (1981). If the dispute is within the scope of an arbitration agreement, an arbitrator may properly decide whether a contract is 'voidable' because the parties have agreed to arbitrate the dispute. But, because an 'arbitrator's jurisdiction is rooted in the agreement of the parties,' *George Day Constr. Co. v. United Bhd. of Carpenters, Local 354,* 722 F.2d 1471, 1474 (9th Cir.1984) ..., a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision."

*Id.* at 1140 (citations omitted). In such cases, a challenge to the validity of a whole contract directly and effectively challenges whether a party has agreed to arbitrate its claims *at all,* which is presumptively for the court, and not the arbitrator, to decide. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so.") (citations omitted).

■ The common feature of most, if not all, such cases is a viable claim of lack of assent to the contract, and by extension, the arbitration clause it contains. *See Matter of Nuclear Elec. Ins. Ltd. & Central Power and Light Co.,* 926 F.Supp. 428, 433–34 (S.D.N.Y.1996). Likewise, Stinson argues in the case that AHP failed properly to sign their contract, and therefore never demonstrated the assent necessary to form a binding contract. Stinson relies on *Med Center Cars, Inc. v. Smith,* 727 So.2d 9 (Ala.1998), a case involving a contract for the sale of a car, which was not signed by the seller despite a clause in the contract that it was "[n]ot valid unless accepted by seller or its authorized representative." There, the Alabama Supreme Court held that "the absence of a signature under the arbitration clause shows a lack of mutuality and assent," and thereby renders the contract unenforceable. 727 So.2d at 14 (quoting *Ex parte Pointer,* 714 So.2d 971, 972 (Ala.1997)). Similarly, in *Premiere Chevrolet, Inc. v. Headrick,* a case with facts very similar to those in *Med Center,* the Alabama Supreme Court held that, without a valid signature by the seller, the contract and the arbitration clause therein were unenforceable. 748 So.2d 891, 894 (Ala.1999).

■ Stinson's argument is fatally flawed, however, because a proper signature is by no means the only way a party can manifest assent to a contract. As the Alabama Supreme Court recently stated, "Unless required by a statute to be in writing, a contract does not have to be signed to be enforceable, so long as it is accepted and acted upon." *Merrill Lynch v. Kilgore,* 751 So.2d 8, 11 (Ala.1999). Parties are deemed to have manifested assent, and thereby to have rendered a contract enforceable, whenever their conduct reasonably creates an inference by the other party that they have assented. *Id.; see also Digitel Corp. v. Deltacom, Inc.,* 953 F.Supp. 1486, 1496 (M.D.Ala.1996) (DeMent, J.) ("A party, by his actions and acceptance of the benefits of a contract and by operating under that contract, may ratify and confirm it, even though his actual signature is not affixed.") In this case, AHP manifested assent to the contract by performing its obligations thereunder. By following through on the building of Stinson's home, with all of the specifications required by the contract, AHP clearly demonstrated to Stinson that it considered itself bound by the terms of the contract, and expected Stinson to perform his part as well.

This case is therefore distinguishable from *Premiere Chevrolet,* in which the defendant also argued, albeit unsuccessfully, that it manifested assent through performance of the contract. In *Premiere Chevrolet,* the court concluded that because the contract that included the arbitration clause was only a "buyer's order" that did not require any affirmative performance by the defendant, the defendant's actions could not replace a signature as a means of manifesting assent. 748 So.2d at 894. Absent the defendant's signature, the contract—including its arbitration clause— was not binding, and the plaintiff could not be required to take disputes to an arbitrator. *See id.* The contract involved in the case currently before the court is different from the one examined by the *Premiere Chevrolet* court, however, because it does require performance of many specific affirmative acts by the defendant, including most importantly the requirement that it "furnish labor and materials for the construction of a home." Through performance of these requirements by AHP, Stinson should have been on notice that AHP and Holcey had assented to the contract in its entirety and considered themselves bound to it, despite the absence of a corporate officer's signature. The court therefore concludes that the lack of signature did not void the contract or the arbitration clause included in it.

### B. *Unavailability of Designated Arbitrator*

Stinson next argues that the arbitration clause included in his contract with AHP is unenforceable because the National Academy of Conciliators, the arbitrator designated in the contract for resolution of disputes, was not in existence at the time the contract was formed or at any time thereafter. AHP admits that the National Academy of Conciliators went out of business some time in 1996, while Stinson signed his contract with AHP on March 31, 1997. According to Stinson, the non-existence of the designated arbitrator from the time of contract formation rendered performance of the arbitration clause impossible, and therefore excused the parties from being bound by it.

The Alabama Supreme Court was recently confronted with a similar situation in which the arbitrator specified in the contract was no longer in existence by the time the defendant sought to compel arbitration of the plaintiff's claims. *See Warren v. American Home Place,* 718 So.2d 45 (Ala.1998). There, the court looked to § 5 of the FAA, which provides:

"If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if *for any other reason* there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator." (emphasis added)

9 U.S.C.A. § 5, *cited in Warren,* 718 So.2d at 48. Based on this language and on the lack of any evidence indicating that the identity of the arbitrator was an essential term of the contract, the Alabama Supreme Court rejected the plaintiff's argument that the unavailability of the designated arbitrator rendered the arbitration clause unenforceable.

The Eleventh Circuit Court of Appeals also turned to § 5 of the FAA in a recent case involving an arbitration clause that designated an arbitrator who was no longer in existence when the defendant sought to compel arbitration. In *Brown v. ITT Consumer Financial Corporation,* the court stated, "Only if the choice of forum is

an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern' will the failure of the chosen forum preclude arbitration." 211 F.3d 1217, 1220 (11th Cir.2000) (quoting *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 742 F.Supp. 1359, 1364 (N.D.Ill. 1990)). Because the plaintiff there produced no evidence suggesting that the identity of the chosen arbitrator was integral to the agreement, the court concluded that § 5 was applicable and a new arbitrator should be chosen.

The same reasoning applies in the case currently before the court. Although the arbitrator specified in Stinson's contract with AHP is not now available to resolve their dispute, there is no indication that the choice of that particular arbitrator was central to the arbitration clause. In such cases, § 5 dictates that the court choose another arbitrator and enforce the arbitration clause.

Stinson attempts to distinguish his case on the grounds that the National Academy of Conciliators did exist when Warren formed his contract with AHP, while it had already gone out of business when Stinson signed his contract. However, the language in § 5 to the effect that the court should appoint a new arbitrator if the designated arbitrator becomes unavailable "for any other reason" indicates that this distinction is immaterial. The court therefore concludes that the fact that the National Academy of Conciliators is no longer in existence does excuse either party from compliance with the arbitration clause.

### C. *Unconscionability*

Stinson's third basis for opposing the motion to compel arbitration is that the arbitration clause is unconscionable. To support this contention, Stinson argues that he was not properly advised at the time he signed the contract of the meaning of the arbitration clause or of its legal ramifications. For the following reasons, the court finds this argument unpersuasive.

Stinson is correct that the FAA does not require the enforcement of an arbitration provision where it is invalid "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. The Supreme Court has confirmed that § 2 "gives States [ ] method[s] for protecting consumers against unfair pressure to agree to a contract with an unwarranted arbitration provision" both in equity and under principles of contract law. *Allied–Bruce,* 513 U.S. at 281, 115 S.Ct. at 843. The Alabama Supreme Court has also recognized that a finding that an arbitration clause is an unjust and unreasonable contract of adhesion might be grounds not to enforce that clause under the FAA. *See Ex parte Merrill Lynch, Pierce, Fenner & Smith,* 494 So.2d 1, 4 (Ala.1986).

Alabama law does not have an explicit standard for determining unconscionability. *See Roberson v. Money Tree of Alabama,* 954 F.Supp. 1519, 1524 n. 7 (M.D.Ala.1997) (Thompson, J.) (discussing the "definitional haziness" in Alabama law and in the Uniform Commercial Code). Rather, Alabama courts use the following four factors to determine whether a contract or contract provision is unconscionable: (1) whether there is an absence of meaningful choice on one party's part; (2) whether the contractual terms are unreasonably favorable to one party; (3) whether there was unequal bargaining power among the parties; and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract. *See Layne v. Garner,* 612 So.2d 404, 408 (Ala.1992) (citing *Wilson v. World Omni Leasing, Inc.,* 540 So.2d 713, 717 (Ala.1989); *Lloyd v. Service Corp.,* 453 So.2d 735, 739 (Ala. 1984); *Crestline Center v. Hinton,* 567 So.2d 393 (Ala.Civ.App.1990); *Advertiser Co. v. Electronic Engineers,* 527 So.2d 1317 (Ala.Civ.App.1988)). In addition, Alabama courts recognize that the rescission of a contract or portion of a contract "is an extraordinary remedy usually reserved for the protection of the unsophisticated and uneducated." *Marshall v. Mercury Fi-*

*nance Co.,* 550 So.2d 1026, 1028 (Ala.Civ. App.1989) (quoting *E & W Building Material Co. v. American Savings & Loan Ass'n,* 648 F.Supp. 289, 291 (M.D.Ala. 1986)).

The Alabama Supreme Court has also defined an unconscionable contract as one " 'such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.' " *Layne,* 612 So.2d at 408 (quoting *Hume v. United States,* 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889)). Stating the standard in this manner may be overly exacting, and thus impossible of proof. Yet, at a minimum, a party cannot rely on an abstract principle or theory of unfairness of a bargain to make a case for unconscionability; it must still be gauged by the actual circumstances of the case, and not in the abstract. Therefore, this court will still pose the question: what *exactly* has Stinson unwillingly or unwittingly sacrificed or lost in this contract that is so patently unfair and unreasonable as to be unconscionable? The court must limit its review to the terms of the clause itself and how those terms are unconscionable to the party seeking avoidance of the clause: "The precise question in this case ... is whether the arbitration clause is so unfavorable to [Stinson] that it simply would not have been reasonable for him knowingly to accept it, given any meaningful choice," *Roberson,* 954 F.Supp. at 1525, and whether he "cannot obtain through arbitration the very same relief that would be otherwise available in a court action." *Id.* at 1526.

A court must be wary of finding a contract unconscionable where the plaintiff is "left with some place to go," *cf. Ex Parte Merrill Lynch,* 494 So.2d at 4 ("plaintiff has failed to present this Court with any reasons why we should presume that an unjust result will necessarily occur [from being forced to use arbitrator of defendant's choice]"), because denial of a specific remedy or forum is substantively different from denial of any means of enforcement whatsoever. *See In re Elkins–Dell Mfg. Co.,* 253 F.Supp. 864 (E.D.Pa. 1966) (Lord, J.).

■ In the case currently before the court, Stinson has provided no evidence that enforcement of any particular feature of the arbitration clause in his contract with AHP would cause him a specific injury. Nor has he demonstrated that enforcement of the arbitration clause will strip him of a remedy that he could access through adjudication of his claims by a federal court. Thus, the court cannot conclude that the arbitration clause at issue in this case is unconscionable.

### D. *Seventh–Amendment Right to a Jury Trial*

■ Stinson also argues that requiring him to resolve his disputes with AHP and Holcey would deprive him of his seventh-amendment right to a trial by jury. Once again, the court finds his contentions unconvincing. In order to demonstrate that his seventh-amendment rights were violated, a plaintiff must show that the arbitration clause itself is unconscionable, such that "the arbitrator cannot hear his claims against [the defendants], or cannot award the full panoply of relief available in state courts under Alabama law." *Goodwin v. Ford Motor Credit Co.,* 970 F.Supp. 1007, 1015 (M.D.Ala.1997) (Thompson, J.). Absent such a showing, federal arbitration policy, as announce by the Supreme Court in *Allied–Bruce,* requires the court to presume that, by signing the agreement, Stinson knowingly and intelligently waived his right to a jury trial. 513 U.S. at 280–82, 115 S.Ct. 834. Because the court has already concluded that the arbitration clause included in Stinson's contract with AHP was not unconscionable, it cannot conclude that Stinson's right to a jury trial was unlawfully abridged.

### E. *Scope of the Arbitration Clause*

■ Fifth, Stinson contends that even if the arbitration clause is enforceable as a general matter, it is not applicable to the

particular claims he has raised. He argues that the arbitration clause was intended to reach only certain types of disputes between the parties, and that the causes of action he has asserted fall outside of that narrowly-defined group. Specifically, the arbitration clause states that "any unresolved disagreement arising out of this contract" must be submitted to arbitration. The question Stinson raises, therefore, is whether the causes of action he has asserted "arise out of" his contract with AHP.

The Alabama Supreme Court addressed this issue thoroughly in *Koullas v. Ramsey:*

> "Where, as here, an arbitration clause refers to disputes or controversies 'arising under' an agreement, the clause will apply only to those claims arising under the terms of the agreement, and it will not extend to matters or claims independent of, or merely collateral to, the agreement. ... We agree that, in order for a dispute to be characterized as arising out of or relating to the subject matter of the contract, and thus subject to arbitration, it must at the very least raise some issue that cannot be resolved without a reference to or construction of the contract itself."

683 So.2d at 417–18 (internal citations omitted); *see also Georgia Power Co. v. Partin,* 727 So.2d 2, 5–6 (Ala.1998) (citing *Koullas* for the same proposition of law).

Using this test, Stinson's claims do "arise out of" the contract. Stinson has raised three causes of action against AHP and Holcey, for fraudulent misrepresentation, fraudulent suppression, and continuing suppression. His theory is that AHP, through Holcey, represented to him that the total cost of his new home and his monthly payments would be a certain amount, whereas they ended up being significantly higher than the quoted price. In order to resolve these claims, the fact finder will have to refer to the terms of the contract specifying the cost of the home, as well as the terms related to the financing of the home. Since Stinson's claims cannot

be resolved without reference to the terms of the contract, they are within the scope of the arbitration clause, and therefore subject to binding arbitration upon AHP's demand.

### F. *Novation*

■ Finally, Stinson argues that the arbitration clause is invalid because the entire contract was replaced by a subsequent contract. Stinson refers to a six-page fax, sent to him by Holcey on May 27, 1997, which included replacements for the first two pages of the contract. These two pages are the ones that specify the itemized and total price of the home, as well as the closing costs. The faxed sheets reflect a downward adjustment of these figures from those initially included in the March 31, 1997, contract. Using a theory of novation, Stinson argues that these two new pages replaced the entire contract, thereby voiding all of the initial terms, including the arbitration clause. For the reasons that follow, the court is unpersuaded by this argument.

■ Under Alabama law, four elements are necessary to establish a novation, there must be "(1) a previous valid obligation; (2) an agreement of the parties thereto to a new contract or obligation; (3) an agreement that it is an extinguishment of the old contract or obligation; and (4) the new contract or obligation must be a valid one between the parties thereto." *Boh Brothers Construction Co. v. Nelson,* 730 So.2d 132, 134 (Ala.1999); *see also Medley v. SouthTrust Bank of the Quad Cities,* 500 So.2d 1075, 1081 (Ala.1986); *Warrior Drilling and Engineering Co. v. King,* 446 So.2d 31, 33 (Ala.1984). Stinson has failed to provide any evidence to support the third of these elements; the court has before it no indication that, by sending two replacement pages, AHP and Holcey intended that the terms in the remaining seven pages of the original contract should be rendered unenforceable. Because the Alabama Supreme Court has made plain that "the party alleging a novation has the

burden of proving that the parties intended a novation," the court must therefore conclude that the May 27, 1997, fax did not extinguish the March 31, 1997, contract, or the arbitration clause therein. *Golden v. Bank of Tallassee,* 639 So.2d 1366, 1369 (Ala.1994).

### III. CONCLUSION

For the foregoing reasons, the court concludes that Stinson's claims are subject to arbitration and that the motion to compel arbitration and to stay proceedings in this court, filed by AHP and Holcey, should be granted.

An appropriate judgment will be granted.