Iris SIMS, Plaintiff,

v.

**CLARENDON NATIONAL INSURANCE COMPANY,** Defendant.

No. 04–60401.

United States District Court, S.D. Florida, Miami Division.

Sept. 22, 2004.

Lawrence David Bache, Pembroke Pines, FL, for Plaintiff.

Daniel D. Whitaker, E. Ashley McRae, Carey O'Malley Whitaker & Manson, Tampa, FL, Bradley Seldin, Steven M. Ziegler, Hollywood, FL, for Defendant.

## *ORDER ON PENDING MOTIONS*

ALTONAGA, District Judge.

**THIS CAUSE** came before the Court upon Defendant, Clarendon National Insurance Company's Motion to Dismiss or Alternatively, to Stay Litigation and Compel Binding Arbitration (**D.E. 4–1, 4–2 & 4–3**); and Plaintiff, Iris Sims' Motion for Leave to File Affidavit of Iris Sims in Support of her Response to Clarendon's Motion to Dismiss, or Alternatively to Compel Binding Arbitration (**D.E.15**). The Court has carefully considered the Motions, the written submissions of the parties, the pertinent portions of the record, and applicable law.

## I. Sims' Motion for Leave to File Affidavit of Iris Sims

Plaintiff, Iris Sims ("Sims"), seeks leave to file her Affidavit in response to Defendant, Clarendon National Insurance Company's ("Clarendon") Motion to Dismiss, or Alternatively to Stay Litigation and Com-

pel Binding Arbitration ("Clarendon's Motion").

 The party opposing a motion to compel arbitration or to stay litigation pending arbitration "has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration." *Aronson v. Dean Witter Reynolds, Inc.*, 675 F.Supp. 1324, 1325 (S.D.Fla.1987). "This burden is not unlike that of a party seeking summary judgment." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Therefore, "[t]he party opposing arbitration should identify those portions of 'the pleadings, depositions, answers to interrogatories, and ...' affidavits which support its contention." *Id. See also Bertram v. Beneficial Consumer Discount Co.*, 286 F.Supp.2d 453, 456 (M.D.Pa.2003) (in the context of a motion to compel arbitration, or to stay pending arbitration, "the court may consider the pleadings, documents of uncontested validity, and affidavits or depositions submitted by either party").

Sims is granted leave based on good cause shown, and the Court has considered Sims' Affidavit in resolving Clarendon's Motion, as well as the Complaint and the documents attached as exhibits to the Complaint, the validity of which is uncontested.

## II. Clarendon's Motion to Dismiss, or to Stay Litigation and Compel Arbitration

### A. *Factual and Procedural Background*

Sims, a resident of the State of Florida at all relevant times, applied for and purchased health insurance coverage under a Group Short Term (one year) Major Medical Expense Insurance Policy issued to her by Clarendon. The policy is entitled "The Competitor 12X3 Flex Term Major Medical Short Term Medical Plan, Policy Number 027–40–9679" (the "Policy"), with an effective date of coverage of May 25, 2003.

There are several relevant provisions in the Policy and other governing documents. The Certificate of Insurance issued to Sims has the following provision:

## 30 DAY RIGHT TO RETURN THE GROUP POLICY

If for any reason You are not satisfied with this Certificate, You may return it to Clarendon within 30 days after You receive it. We will refund any premium paid and the Certificates issued under the Group Policy will be deemed void, just as though it had not been issued.

(Compl.Ex. A, p. 4). Moreover, the Certificate of Insurance states that "the Policyholder ... may be inspected at any reasonable time on request." (*Id.*). The Policy states in section GP–20, that "[t]he Certificate [of Insurance provided to the Policyholder] describes the main features of the Group Policy.... In the event of any conflict, the terms of the Group Policy will govern." (*Id.* at p. 17 (numbered 14)).

 Section GP–20, entitled "General Provisions," contains an arbitration agreement (the "Arbitration Agreement"), which provides:

**Arbitration**: *Any disputes* which You may have under the Group Policy or otherwise with Us or Our authorized Administrator must be arbitrated in accordance with the commercial arbitration rules of the American Arbitration Association ["AAA"]. The right of arbitration may be invoked by either You or Us or both. Judgment upon any arbitration award may be entered in a court of proper jurisdiction. Judicial review is limited in accordance with applicable law.

(*Id.* at p. 17 (numbered 14)) (emphasis added). Another clause in Section GP–20 provides:

> **Legal Proceedings:** No proceedings to obtain benefits under the Group Policy may be brought against Us until the expiration of 60 days after proper written proof of loss and any other documentation necessary to establish what benefits are due under the provisions of the Group Policy have been received by Us. No proceedings may be brought more than 3 years after proof is required to be filed.

(*Id.* at p. 18 (numbered 15)). Additionally, the Policy contains a merger or integration clause that reads as follows:

> **Entire Contract:** The entire contract consists of the Group Policy, the Application of the Association, Your application form and any other documents requested and accepted by Us. No change in the Group Policy or Your Certificate is valid unless approved by Our executive officer. Such approval must be signed by the officer and attached to the Group Policy and Certificate. No broker, agent or producer can change or waive any provision of the entire contract or any of Our requirements.

(*Id.*). Finally, the Policy includes the following provision:

> **Conformity with Statutes:** Any provision of the Group Policy that is in conflict with the statutes of the *jurisdiction in which the Policyholder is located on such date* is hereby amended to conform to the minimum requirements of such statutes.

---

1. Florida law governs the Policy based on this provision stating that the Policy conforms to the statutes of the jurisdiction in which Sims is located. Where a contract, as here, specifics the state law to be applied, such provision will ordinarily be given effect in deciding the parties' right to arbitrate. *See Marine Envtl.*

(*Id.* Ex. A, p. 18 (numbered 15)) (emphasis added).[1]

On or about June 3, 2003, Sims was first informed that she had acute leukemia and began to undergo treatment for this condition soon thereafter, including hospitalization. It is alleged that since June 3, 2003, Sims has incurred and continues to incur medical expenses in connection with the treatment of her leukemia in an amount exceeding $350,000. Sims further alleges that she paid her monthly premiums for coverage under the Policy in a timely manner on the fifteenth day of each month via an automatic deduction from her credit card account. Sims filed a claim with Clarendon for benefits under the Policy to pay the cost of her treatment for leukemia. Sims alleges that Clarendon breached its contract of insurance with Sims by refusing to pay benefits under the Policy to cover the cost of the treatment of her leukemia.

By letter dated October 8, 2003 from the company that administered the Policy for Clarendon, Health Plan Administrators, Inc., Sims was informed that the medical expenses she had incurred or would incur in connection with the treatment of her leukemia would not be covered on the basis that these charges were excluded under a pre-existing condition clause in the Policy. The letter stated, *inter alia*, that a review of her medical record indicated that she had been suffering from symptoms of leukemia before the effective date of the Policy. Sims appealed the denial of benefits, but lost the appeal based on the pre-existing condition clause in the Policy.[2]

---

*Partners, Inc. v. Johnson,* 863 So.2d 423, 425 (Fla. 4th DCA 2003).

2. The terms of the pre-existing condition clause are not relevant to Clarendon's Motion, and are therefore not addressed.

Sims has never been paid the claimed benefits under the Policy.

On February 20, 2004, Sims filed her one-count Complaint for breach of contract against Clarendon. On April 2, 2004, Clarendon filed a Motion to Dismiss, or Alternatively to Stay Litigation and Compel Binding Arbitration. In its Motion, Clarendon asserts that, by virtue of the Arbitration Agreement between the parties, the present dispute is subject to compulsory arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (hereinafter referred to as the "FAA"). Clarendon relies on the foregoing provisions of the parties' Agreement, as well as the FAA, to urge that Sims be compelled to submit her claim to arbitration. Sims has responded with several arguments as to why Florida law, rather than the FAA, should apply in deciding whether to enforce the Arbitration Agreement, and why the Agreement is unconscionable and conflicts with other provisions in the Policy.

**B. *The FAA Governs Enforcement of the Arbitration Agreement***

1. *The FAA Covers this Insurance Coverage Dispute*

██ The parties dispute whether the FAA or Florida law should be applied to the Arbitration Agreement. The FAA establishes a general federal policy favoring arbitration. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217–18, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). In Section 2 of the FAA, the Act requires the enforcement of arbitration clauses in contracts covered by the provisions of the Act, stating:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has recognized that "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

The term "commerce" as used in Section 2 of the FAA means interstate commerce. *See* 9 U.S.C. § 1 (" '[C]ommerce', as herein defined, means commerce among the several States...."). The Supreme Court has interpreted the phrase "involving commerce" broadly. *See Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). "[I]nvolving commerce" requires only "that the 'transaction' in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Id.* at 281, 115 S.Ct. 834. In this case, Clarendon is a New Jersey corporation with its principal place of business in New York. Sims is a Florida resident. Because the Policy was issued by a foreign corporation to a Florida resident, it involves interstate commerce and the FAA applies. *See Flach v. Clarendon Nat'l Ins. Co.,* Case No. 8:04–CV–49–T–17MSS, *3–4 (MD. Fla. April 8, 2004) (finding the same Clarendon insurance policy issued to a Florida resident was governed by the FAA and granting Clarendon's motion to compel arbitration) (citing *Mayard–Paul v. Mega Life & Health Ins. Co.,* 2001 WL 1711519 (S.D.Fla.2001); *Miller v. Nat'l Fidelity Life Ins. Co.,* 588 F.2d 185, 186 (5th Cir. 1979); *Hart v. Orion Ins. Co.,* 453 F.2d 1358 (10th Cir.1971); *Palozie v. State*

*Farm Mutual Auto. Ins. Co.*, 1996 WL 814533, *2 (D.Ariz.1996) ("Insurance policies clearly involve interstate commerce and are subject to the [Federal Arbitration] Act")).

Sims argues, however, that, under Florida law, insurance coverage disputes like this one are for the Court to decide and are not subject to arbitration even where the parties agreed to arbitration in the policy. Sims cites to a line of cases for the proposition that insurance coverage issues are for judicial resolution. *See Johnson v. Nationwide Mut. Ins. Co.*, 828 So.2d 1021 (Fla.2002); *State Farm Fire & Cas. Co. v. Licea*, 685 So.2d 1285 (Fla.1996); *Midwest Mut. Ins. Co. v. Santiesteban*, 287 So.2d 665 (Fla.1973); *Delisfort v. Progressive Express Ins. Co.*, 785 So.2d 734 (Fla. 4th DCA 2001); *Gonzalez v. State Farm Fire & Cas. Co.*, 805 So.2d 814 (Fla. 3d DCA 2000); *State Farm Fire & Cas. Co. v. Licea*, 649 So.2d 910, 911–12 (Fla. 3d DCA 1995).

The Florida law cited by Sims does not apply to the Arbitration Agreement. Even if Florida courts, applying common law, would not permit arbitration of an insurance coverage dispute, the Supreme Court in *Perry v. Thomas* concluded that the FAA could only be preempted by laws that concern revocability of a contract, not the enforceability of arbitration clauses. 482 U.S. 483, 489, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). The Supreme Court explained:

> '[I]n enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' .... Section 2, therefore, embodies a clear federal policy of requiring arbitration unless the agreement to arbitration is not part of a contract evidencing interstate commerce or

is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.' 8 U.S.C. § 2. 'We see nothing in the Act indicating that the broad principles of enforceability is [sic] subject to any additional limitations under state law.'

*Id.* (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10–11, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)). Relying on this interpretation by the Supreme Court, the court in *Jensen v. Rice* held that "Florida courts must enforce arbitration agreements that are valid and enforceable under the Federal Arbitration Act, even where, as here, the arbitration agreement would not be enforceable under Florida law." 809 So.2d 895, 899 (Fla. 3d DCA 2002) (citing *Southland Corp.*, 465 U.S. at 11–12, 104 S.Ct. 852). Therefore, the FAA is not preempted by Florida case law barring *enforcement* of the Arbitration Agreement.

2. *The Court Does Not Address Preemption of the FAA by the McCarran–Ferguson Act*

■ Although not raised by Sims in any of her papers, Clarendon argues in a footnote on page 3 of its Reply in support of its Motion to Compel Arbitration that the McCarran–Ferguson Act, 15 U.S.C. § 1011, *et seq.*, does not bar the application of the FAA to this dispute. The McCarran–Ferguson Act states that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). According to the Act, then, the states generally retain power to regulate the insurance industry by statute.

Because Sims does not rely on the McCarran–Ferguson Act and the parties have not fully briefed the issue, the Court has not considered preemption under the McCarran–Ferguson Act in this Order.

Essentially, by not raising McCarran–Ferguson Act preemption in her Response and not seeking leave to file a sur-reply addressing the issue, Sims has waived that argument against enforcement of the Arbitration Agreement under the FAA. *See, e.g., Transamerica Leasing, Inc. v. Institute of London Underwriters,* 267 F.3d 1303, 1308 n. 1 (11th Cir.2001) (appellant insurers waived any argument that purported insured's failure to disclose material information required voidance of the policy, where insurers failed to raise such argument in response to insured's motion for summary judgment on the issue of insurers' liability) (citing *Publishers Res., Inc. v. Walker–Davis Publ'ns, Inc.,* 762 F.2d 557, 561 (7th Cir.1985)).

### C. *The "Legal Proceedings" Clause Does Not Conflict With the "Arbitration" Agreement*

■ Sims also argues that the clause concerning "Legal Proceedings to Obtain Benefits" is in conflict with the Arbitration Agreement, and that the conflict should be resolved in favor of Sims and against compelling arbitration. In essence, Sims suggests that enforcement of the Arbitration Agreement would render meaningless Sims' right to bring "Legal Proceedings" to obtain benefits.

■ Admittedly, federal law recognizes judicial proceedings and arbitration proceedings as *separate,* albeit equally important, fora for adjudicating claims. *See Weaver v. Florida Power & Light Co.,* 172 F.3d 771, 774 n. 7 (11th Cir.1999). In *Weaver,* the Eleventh Circuit addressed the differences between arbitration proceedings and legal proceedings, and the effect of the FAA as follows:

> The difficulty in this case arises because the proceeding to be enjoined is not a judicial proceeding but an arbitration. Remedies available through arbitration certainly are not remedies "at law" in

the technical sense. We are compelled to treat such remedies as remedies at law, however, because of the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (1994). The Act—by ensuring the enforceability of contractual arbitration provisions and subjecting the resulting arbitrations to only a very limited degree of judicial review—embodies a federal policy favoring arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). That policy rules out any "judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals," *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985), a competence that extends to deciding issues of waiver, res judicata, and other defenses that challenge whether a matter should be arbitrated at all. *See Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25, 103 S.Ct. at 941. Consequently, we conclude that a remedy available through arbitration, if adequate, constitutes an adequate remedy at law such that equitable relief is improper. *See Foxboro Co. v. Arabian Am. Oil Co.,* 805 F.2d 34, 37 (1st Cir.1986); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Thomson,* 574 F.Supp. 1472, 1479 (E.D.Mo.1983).

172 F.3d at 774 (internal footnote omitted). The Eleventh Circuit further stated that "[t]he same principle that have birth to the adequate remedy at law requirement ... dictates that the judiciary not intervene when an adequate remedy is available through arbitration." *Id.* at 774 n. 7.

Therefore, Sims is correct in arguing that an arbitration is not a "legal proceeding," although it generally has the same force and effect of a legal proceeding based on the FAA. More importantly, however, the undersigned finds that the two clauses may be reconciled. Read together,

they provide the parties with an election of remedies. The parties agree to arbitrate any dispute arising under the Policy prior to the institution of "legal proceedings." The Arbitration Agreement even provides that "the right of arbitration *may* be invoked by either [the Policyholder or Clarendon]." (emphasis added). However, in the event the parties are in agreement to waive their right to arbitrate, then any legal proceedings must be instituted within the time period specified. The commencement of legal proceedings without protest by either party would constitute a waiver of the Arbitration Agreement. Other state and federal courts that have examined similar issues raised by potentially conflicting contractual provisions have arrived at the same result favoring arbitration.[3]

■ Clarendon's position, and this Court's conclusion, that both provisions coexist without conflict, is well-supported by case law on contract interpretation. "A primary rule of contract interpretation is that where provisions in an agreement appear to be in conflict, they should be construed so as to be reconciled if possible," and "[i]n so doing, the court should strive to give effect to the intent of the parties in accord with reason and probability as gleaned from the whole agreement and its purpose." *Arthur Rutenberg Corp. v. Pa-*

---

3. *See, e.g., Goff Group, Inc. v. Greenwich Ins. Co.*, 231 F.Supp.2d 1147, 1151–52 (M.D.Ala. 2002) (arbitration clause in insurance contract required arbitration, despite claim that a choice-of-law provision was conflicting and rendered the arbitration clause inapplicable); *Higman Marine Servs., Inc. v. BP Amoco Chem. Co.*, 114 F.Supp.2d 593, 596–97 (S.D.Tex.2000) (forum selection clause and arbitration clause in contract were not in conflict or inconsistent with one another; forum selection clause simply provided a forum for "litigation, if any" that "may come to bear before, during, after, or in lien of arbitration") (citing *Place St. Charles v. J.A. Jones Constr. Co.*, 823 F.2d 120, 124 (5th Cir.1987) for the proposition that "[a] case that proceeds to arbitration may nevertheless require that a court enter a judgment pursuant to the arbitral award"); *Docutel Olivetti Corp. v. Dick Brady Sys., Inc.*, 731 P.2d 475, 479 (Utah 1986) (assuming that distributor's claim was properly within paragraph of a dealership agreement providing for litigation of claims arising out of credit agreements, conflict between that provision and an arbitration clause also included in the contract would be resolved in favor of the arbitration clause; if the parties had intended to exclude any provision from the arbitration clause, they would have done so simply by adding the phrase "except as provided in ——" to the arbitration clause); *New Concept Constr. Co., Inc. v. Kirbyville Consolidated Independent School Dist.*, 119 S.W.3d 468, 470–71 (Tex.App.—Beaumont 2003) (forum selection clause and arbitration clause in a construction contract did not irreconcilably conflict, but rather, the provisions together meant that the contractor was required to file any court proceeding not precluded by the arbitration provision in the county in which the work was performed, and thus, the contractor's claim against the school district for wrongful termination of contract was subject to arbitration) (citing *In re Orkin Exterminating Co.*, 2000 WL 1752900 (Tex. App.2000) (is a case where the party sought arbitration under the FAA, a contract provision concerning suits in court did not conflict with an arbitration provision and the provisions could be harmonized) (other citations omitted)); *Saturna v. Bickley Constr. Co.*, 252 Ga.App. 140, 141–42, 555 S.E.2d 825 (Ga. App.2001) (arbitration clause in a construction contract did not conflict with another section of the contract that authorized the contractor to institute judicial proceedings against the project owner, and thus the project owner could be compelled to arbitrate; contract showed that the parties agreed to submit disputes arising out of the contract to arbitration, but the contractor could institute judicial proceedings if the contract was terminated). *See also Internal East, Inc. v. Duro Communications, Inc.*, 146 N.C.App. 401, 553 S.E.2d 84, 87–88 (N.C.App.2001) (noting that an arbitration clause and a forum selection clause in the same contract are not inherently in conflict because the arbitration process does not operate completely free of involvement from the courts and the courts retain limited jurisdiction over the disputes being arbitrated).

*sin,* 506 So.2d 33, 34 (Fla. 4th DCA 1987); *see also Florida Polk County v. Prison Health Servs., Inc.,* 170 F.3d 1081, 1084 (11th Cir.1999) ("[T]he provisions of a contract should be construed so as to give every provision meaning.") (citing *Maccaferri Gabions, Inc. v. Dynateria Inc.,* 91 F.3d 1431, 1439 (11th Cir.1996) ("An interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions meaningless.") (citations and internal quotation marks omitted); *Jameson v. Mutual Life Ins. Co. of N.Y.,* 415 F.2d 1017, 1020 (5th Cir.1969) ("An interpretation which gives a reasonable meaning to all provisions is preferable to one which leaves a portion of the [contract] useless, inexplicable or creates surplusage.")). And, it cannot be forgotten that the FAA also requires federal courts to interpret contracts in favor of arbitration. *See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) ("[W]hen a court interprets ... provisions in an agreement covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.' ") (quoting *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)).

### D. *Sims Has Not Shown that the Arbitration Agreement is Unconscionable*

■ A court may not order arbitration under the FAA until it is first satisfied that a valid arbitration agreement exists. *See Miller v. Drexel Burnham Lambert, Inc.,* 791 F.2d 850, 854 (11th Cir.1986). Sims has not met her burden with regard to her claim that the Arbitration Agreement is unconscionable and, therefore, unenforceable under contract law.

■ Issues relating to the making and performance of a contract as a whole, not specific to the arbitration clause, are subject to arbitration. *See Rainbow Investments, Inc. v. Super 8 Motels, Inc.,* 973 F.Supp. 1387, 1389 (M.D.Ala.1997) (holding that a claim for fraud in the inducement of a contract containing an arbitration clause is arbitrable, whereas the court should determine whether there was fraud in the inducement of the arbitration clause itself). "If the dispute is within the scope of an arbitration agreement, an arbitrator may properly decide whether the contract is 'voidable' because the parties have agreed to arbitrate the dispute." *Id.* (citations omitted). Therefore, claims alleging unconscionability, coercion or confusion in signing of an agreement containing an arbitration clause generally should be determined by the arbitrator as those issues go to formation of the entire contract rather than to the issue of misrepresentation in the signing of an arbitration agreement. *Coleman v. Prudential Bache Securities, Inc.,* 802 F.2d 1350 (11th Cir.1986).

■ In contrast, where a party challenges the initial formation or existence of a contract which includes an arbitration clause, the issue should be decided by the court. *Rainbow Investments,* 973 F.Supp. at 1390. Any claim of fraud, duress or unconscionability in the formation of an arbitration agreement that is subject to the FAA is a matter of judicial concern. *See Miller v. Drexel Burnham Lambert, Inc.,* 791 F.2d 850 (11th Cir.1986). Whether an arbitration clause is unconscionable is a question of state law. *Orkin Exterminating Co., Inc. v. Petsch,* 872 So.2d 259, 264 (Fla. 2d DCA 2004).[4] *See also Paladi-*

---

4. The FAA allows state law to invalidate an arbitration agreement, provided the law at issue governs contracts generally and not ar-

bitration agreements specifically. *See Bess v. Check Express,* 294 F.3d 1298, 1306 (11th

*no v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054 (11th Cir.1998) (arbitration clauses are interpreted according to ordinary state-law rules of contract construction). In order for a provision of a contract to be deemed unconscionable, it must be shown that the provision is both procedurally and substantively unconscionable. *Golden v. Mobil Oil Corp.,* 882 F.2d 490, 493 (11th Cir.1989); *Stewart Agency, Inc. v. Robinson,* 855 So.2d 726, 727 (Fla. 4th DCA 2003). The party seeking to avoid enforcement of the arbitration clause based on a claim of unconscionability has the burden of presenting "sufficient evidence" to find that the provision is unenforceable. *Gainesville Health Care Center, Inc. v. Weston,* 857 So.2d 278, 288 (Fla. 1st DCA 2003).

With regard to substantive unconscionability, the Eleventh Circuit has stated that "there is nothing inherently unfair or oppressive about arbitration clauses." *Coleman v. Prudential Bache Secs., Inc.,* 802 F.2d 1350, 1351 (11th Cir.1986); *In re Managed Care Litigation,* 132 F.Supp.2d 989 (S.D.Fla.2000) (citing *Coleman,* 802 F.2d 1350) (there is nothing substantively unconscionable with arbitration clause *per se* ). Substantive unconscionability focuses on the actual agreement and whether or not its terms are unreasonable and unfair. *Stewart Agency, Inc.,* 855 So.2d at 728.

■ The matters that the courts have considered relevant in determining whether an arbitration clause is substantively unconscionable are: (1) the cost of arbitration, *Stewart Agency, Inc.,* 855 So.2d at 728 (citations omitted); (2) whether the clause requires one of the parties to give up or waive any significant legal remedies, *see, e.g., Romano ex rel. Romano v. Manor Care, Inc.,* 861 So.2d 59, 63 (Fla. 4th DCA 2003) (arbitration agreement signed by husband of nursing home patient did not provide adequate mechanisms for vindication of patient's statutory rights under the Nursing Home Resident's Rights Act and thus, was substantively unconscionable; agreement specifically deprived patient of remedies legislature deemed important to the reduction of elder abuse in nursing homes); *Bellsouth Mobility LLC v. Christopher,* 819 So.2d 171 (Fla. 4th DCA 2002) (finding arbitration clause in a customer contract with a telephone service company substantively unconscionable where it required customers to give up specific legal remedies and bound customers to arbitration while granting company option of pursuing court action in some instances); *Avid Eng'g, Inc. v. Orlando Marketplace, Ltd.,* 809 So.2d 1, 5 (Fla. 5th DCA 2001) (arbitration clause in contract under which engineering firm agreed to provide services to shopping center developer was neither procedurally nor substantively unconscionable; provision was negotiated at arms length by relatively sophisticated parties with relatively equal bargaining power and understanding of the contract language, and agreement did not require developer to surrender any of its claims or damages that it could seek in court, but merely substituted the forum for deciding those claims and damages); *Powertel, Inc. v. Bexley,* 743 So.2d 570, 576 (Fla. 1st DCA 1999) (arbitration clause added to cellular telephone service plan by telephone company was substantively unconscionable, as agreement required customers to give up other legal remedies; arbitration clause expressly limited company's liability to actual damages, clause removed company's exposure to any remedy that could be pursued on behalf of class of consumers, and clause forced customers to waive important statutory remedies, in-

Cir.2002). Thus, although the states may not impose special limitations on the use of arbitration clauses, the validity of an arbitration clause is nevertheless an issue of state contract law. *See Powertel, Inc. v. Bexley,* 743 So.2d 570, 574 (Fla. 1st DCA 1999).

cluding injunctive or declaratory relied under Florida Deceptive and Unfair Trade Practices Act). An agreement to submit to arbitration before the AAA is not substantively unconscionable simply because it is silent as to who is required to pay fees because the arbitration rules note that fees may be deferred or reduced in the event of hardship. *See Stewart Agency, Inc.,* 855 So.2d at 728.

 The procedural component of unconscionability relates to the manner in which the contract was entered into. *Stewart Agency, Inc.,* 855 So.2d at 728. It involves consideration of the relative bargaining power of the parties and their *ability to know and understand* the disputed contract terms. *Id.And see, e.g., Orkin Exterminating,* 872 So.2d 259, 265 (arbitration clause of termite extermination contract was not procedurally unconscionable; clause was contained in original contract between parties and it was in *large type* on first page of agreement, rather than being buried in a maze of fine print); *Brasington v. EMC Corp.,* 855 So.2d 1212, 1217–18 (Fla. 1st DCA 2003) (arbitration clause of employment contract was not procedurally unconscionable, even though employer's arbitration policy was not provided to employee at the time she signed the contract; the policy was referenced in the contract, and the employee could easily have obtained a copy of the policy; the arbitration clause was the final paragraph of the contract, was printed just above the line for the employee's signature, was labeled "Arbitration," appeared in bold print and underlined, and plainly stated that disputes relating to or arising out of the employment were subject to arbitration; and employer advised employee in writing that she should seek the advice of counsel before signing); *Romano ex rel. Romano v. Manor Care, Inc.,* 861 So.2d 59, 63–64 (Fla. 4th DCA 2003) (sufficient quantum of procedural unconscionability existed in circumstances surrounding husband of nursing home patient's signing of arbitration agreement as element of finding agreement unenforceable, even though agreement was not hidden in fine print husband and patient were both elderly, there was no showing that the husband had legal training to understand rights he was signing away, and husband was presented with agreement along with other admission documents without explanation of its terms, and without being told that failure to sign would not affect patient's care or her ability to stay in the nursing home); *Consolidated Res., Healthcare Fund I, Ltd. v. Fenelus,* 853 So.2d 500, 504–05 (Fla. 4th DCA 2003) (arbitration clause in nursing home admission agreement, which compelled arbitration of any controversy or claim arising out of or related to agreement, was not procedurally or substantively unconscionable although the clause did not allow signor chance to affirmatively release his right to trial; arbitration clause was fair, optional, could be refused, did not appear in small print, and was titled in boldface, and signor willingly signed agreement after opportunity to read and ask questions about it); *Powertel, Inc. v. Bexley,* 743 So.2d 570 (Fla. 1st DCA 1999) (arbitration clause added to cellular telephone service contract was procedurally unconscionable, as arbitration clause was adhesion contract and there were deficiencies in notice; telephone company prepared clause unilaterally and sent it to its customers as an insert to a monthly bill, customers did not bargain for the arbitration clause, nor could they reject it and continue to use service plans they had purchased, customers had purchased equipment and obtained telephone numbers and worked only with company's service, and there was nothing apart from the effective date to indicate that the insert contained any new term).

Sims has submitted her Affidavit as "evidence to support her position that the

arbitration clause is unconscionable." (Pl.'s Mot. for Leave to File Aff. of Iris Sims in Supp. of her Resp. to Clarendon's Mot. to Dismiss, or Alternatively to Compel Binding Arbitration, p. 2).[5] She states in her Affidavit that she did not have an opportunity to review the Policy until after she was diagnosed and hospitalized with leukemia, and that the cost of arbitration would cause a financial hardship. (*Id.*). Thus, Sims states that she was not aware of her right to cancel until after she learned that she would need expensive treatment for acute leukemia. According to Sims, for Clarendon "[t]o suggest that Sims had a viable option to cancel her coverage with Clarendon when no health insurer would cover her after a diagnosis of acute leukemia is unreasonable," and "[i]t is likewise unreasonable to suggest that Sims should have waited until after she received the Policy to use the coverage for which she had paid." (Pl.'s Reply to Def.'s Memo. of Law in Opp'n to Pl.'s Mot. for Leave to File Aff., p. 2).

The Sims Affidavit also states:

1. I did not receive the Clarendon insurance policy containing the arbitration provision and a 30–day right to cancel until after my routine physical exam with Dr. Smoller which was at 1 p.m. on June 2, 2003. The policy with identification card arrived by mail at approximately 4:00 p.m. on June 2, 2003. Four (4:00) p.m. is the time the mail is delivered to my home....

2. At approximately 8 a.m. on the morning of June 3, 2003 I received a call from Dr. Smoller in which he directed me to go immediately to the hospital (West Side Regional Medical Center) emergency room. I followed his directions and went immediately to the hospital where I was admitted for the treatment of leukemia.

3. In light of the above facts, I did not have an opportunity to review the policy containing the arbitration provision and 30–day right to cancel until after the diagnosis of leukemia.

4. Clarendon has denied coverage for all costs associated with the treatment of my leukemia notwithstanding that the policy has been and remains in effect.

5. In light of the fact that I owe in excess of $350,000 for the treatment of my leukemia, the cost of arbitration would be a financial hardship.

■ First, with respect to Sims' unconscionability argument based on the cost of arbitration, the Arbitration Agreement is not substantively unconscionable on this basis. Sims argues that since the Arbitration Agreement is silent with regard to who will pay the costs of arbitration, then it is substantively unconscionable because she has not been put on notice as to potential arbitration costs. In *Green Tree Fin. Corp.-Alabama v. Randolph*, the Supreme Court stated that, with regard to the arbitration clause at issue in that case, which also lacked details concerning payment of arbitration costs, the "record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable." 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). The Court further concluded that the possibility the plaintiff would "be saddled to prohibitive costs is too speculative," and "[t]o invalidate the agreement on that basis would undermine the 'liberal federal policy favoring arbitration agreements.'" *Id.* (citing *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. 927). The party seeking to avoid arbitration due to excessive costs "bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.

**5.** Sims has submitted no other "evidence" in support of her unconscionability arguments.

Sims includes in a footnote the approximate initial costs of arbitration (estimated at $5000) and relies solely on this estimation to carry her argument that the arbitration costs could exceed her $350,000 claim (Compl.¶ 11). Similar estimations were included in Randolph's documents in *Green Tree Fin. Corp.*, and the court concluded that those figures were too speculative. 531 U.S. at 92 n. 6, 121 S.Ct. 513. Sims further argues that the costs an insured would incur to obtain coverage through arbitration of a small claim could very well exceed the amount of that claim rendering illusory an entitlement to coverage set forth in the Policy. This argument is not applicable to Sims' substantial claim for $350,000 in benefits.

Sims also provides in her Affidavit a conclusory statement that "the cost of arbitration would be a financial hardship." In *Green Tree Fin. Corp.*, the respondent argued that the agreement to arbitrate was unenforceable because it said nothing about the cost of arbitration and therefore, she was at risk of being required to bear prohibitive arbitration costs if she pursued her claims in an arbitral forum. The court held that the risk that the respondent would be saddled with prohibitive costs "is too speculative to justify the invalidation of an arbitration agreement." 531 U.S. at 91, 121 S.Ct. 513. Similarly, in *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1262 (11th Cir.2003), the court held that an affidavit stating that a litigant fears the imposition of prohibitive fees is "wholly inadequate to establish that the arbitration would result in prohibitive costs that force him to relinquish his claim." *See also Kotch v. Clear Channel Broadcasting, Inc.*, 2004 WL 483502 (S.D.Fla.2004) (enforcing arbitration clause including fee-splitting provision based on employee's failure to present evidence showing his personal financial resources and the likelihood of incurring prohibitive arbitration costs).

Sims' Affidavit is equally inadequate. She has failed to put forward evidence that she is unable to pay any arbitration fees that may be imposed as part of the arbitration process, or that she is even likely to bear such fees. Such a showing by Sims is required before the Arbitration Agreement may be found invalid or unenforceable. *See Anders v. Hometown Mortgage Servs., Inc.*, 346 F.3d 1024, 1029 (11th Cir.2003) (citing *Green Tree Fin. Corp.*, 531 U.S. at 90, 121 S.Ct. 513); *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1262 (11th Cir.2003) (citing *Green Tree Fin. Corp.*, 531 U.S. at 91, 121 S.Ct. 513). There is no record evidence as to Sims' personal financial resources, assets, income or liabilities.

Moreover, should Sims not be able to afford arbitration fees, Rule 38 of the applicable Rules of the AAA permit the Association to "defer or reduce the administrative fees" in the "event of extreme hardship on any party." Additionally, Rule 27 of those Rules permit the arbitrator to "take whatever interim measures he or she deems necessary with respect to the dispute." Sims has failed to explore the options presented by these Rules, and thus any argument that she would incur "prohibitive costs" is premature.

■ The Court next addresses Sims' argument that she was not aware of the 30–day right to return the Policy. Clarendon argues that if Sims was dissatisfied with the Arbitration Agreement or any other provision contained in the Policy, she had the right under the express terms of the Policy to return the Certificate and receive a refund of any premiums paid. Sims' Affidavit states that she did not receive the Policy containing the Arbitration Agreement until after she attended a routine doctor's appointment during which she allegedly learned that she had leukemia. Thus, according to Sims, she did not have

an opportunity to review the Policy and its Arbitration Agreement, or the 30–day right to cancel clause, until after she was diagnosed with leukemia.

According to the terms of the Policy, Sims had a right to request a copy of the Policy at all times. Nevertheless, she scheduled a "routine doctor's appointment" prior to receipt and review of the Policy. There is no indication that Clarendon prevented or delayed Sims from receiving or reviewing the Policy and its terms, including the Arbitration Agreement, prior to seeking medical services. Sims does not allege that she was denied the opportunity to review the Policy prior to signing the contract. Therefore, it is assumed that Sims had an opportunity to read, ask questions, and even revoke acceptance of the Policy within 30 days, but chose not to do so prior to visiting a doctor and seeking treatment, thereby accepting the terms of the Policy, including the Arbitration Agreement. Finally, it would be inequitable to allow Sims to pick and choose which provisions of the Policy should be enforced and which should not be enforced (*i.e.*, she would like to retain the benefits of coverage, but reject the Arbitration Agreement).

Sims has not alleged that she was forced to contract with Clarendon on a "take it or leave it" basis or that she could not have obtained coverage without acquiescing to Clarendon's terms. She has not alleged that the terms themselves are unreasonable or unfair, nor that they are confusing or ambiguous. The Arbitration Agreement does not require insureds such as Sims to give up or waive any legal remedies; it only requires that the claims and damages must be decided by an arbitrator, at least initially, and the arbitration requirement applies equally to both parties.

**6.** The issue of whether or not the parties have agreed to arbitrate a dispute is generally decided based on state-law contract principles.

Moreover, the Arbitration Agreement is clearly stated in the Policy with a title in bold-faced type and of a regular-sized print, as opposed to a small, unintelligible fine print, and the section is labeled "Arbitration." That Sims was not provided with the Arbitration Agreement at the time she executed the contract with Clarendon, even if true, does not require a finding of procedural unconscionability according to *Brasington, supra.* Finally, Sims has not alleged that she was elderly, incapacitated, or for some other reason *unable* to know and understand the Arbitration Agreement.

Based on the foregoing, Sims has failed to meet her burden of establishing by "sufficient evidence" that the Arbitration Agreement is substantively or procedurally unconscionable.

### E. *Clarendon Has a Right to Arbitration*

Clarendon has shown that it has satisfied the requirements for enforcement of the Arbitration Agreement. As already mentioned, the FAA " 'creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement.' " *Ivax Corp. v. B. Braun of America, Inc.*, 286 F.3d 1309 (11th Cir.2002) (quoting *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1057 (11th Cir.1998)) (other citations omitted). Similarly, "[u]nder Florida law,[6] a clause in a contract that requires the parties to submit their claims to arbitration is enforceable, and arbitration clauses are generally favored by the courts." *Dadeland Station Assocs., Ltd. v. St. Paul Fire & Marine Ins. Co.*, 2003 WL 21981974, *7 (S.D.Fla.) (citations omitted).

See *Johns v. Taramita*, 132 F.Supp.2d 1021, 1025 (S.D.Fla.2001).

Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived. *Marine Envtl. Partners, Inc. v. Johnson,* 863 So.2d 423, 426 (Fla. 4th DCA 2003) (citing *Seifert v. U.S. Home Corp.,* 750 So.2d 633 (Fla.1999)).

■ The execution of the Arbitration Agreement and Sims' refusal to arbitrate are not in dispute.[7] For the reasons stated above with respect to the validity and enforceability of the Agreement, and based on the all-encompassing *"any disputes"* language of the Arbitration Agreement, and there being no other provisions of the Policy that specifically exclude any particular disputes from arbitration or show an intent by the parties to exclude certain claims from scope of their Arbitration Agreement, an arbitrable issue exists with respect to Sims' breach of contract claim.[8] Additionally, Sims has not suggested or shown that Clarendon has waived its right to arbitration by taking actions inconsistent with that right, or that she has been prejudiced in any way by Clarendon's actions prior to the filing of Clarendon's Motion.[9] In the absence of waiver, a court must compel arbitration when an arbitration agreement and an arbitrable issue exist. *See, e.g., Bill Heard Chevrolet Corp., Orlando v. Wilson,* 877 So.2d 15, 18 (Fla. 5th DCA 2004).

For all of the reasons stated above, the Court concludes that arbitration in accordance with the Arbitration Agreement should be compelled, and further concludes pursuant to the FAA, 9 U.S.C. §§ 3, 4, that the case shall be stayed pending the outcome of such arbitration proceedings. Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Leave to File Affidavit of Iris Sims **(D.E.15)** is **GRANTED.** The Affidavit of Iris Sims that is attached as an exhibit to Plaintiff's Motion for Leave to File Affidavit is accepted as filed. **The Clerk of Court is instructed to docket and scan the Affidavit.**

2. Clarendon's Motion to Dismiss, or Alternatively to Stay Litigation and

---

**7.** Where there is a dispute between the parties to a contract concerning the propriety of arbitration, as here, the proper procedure is for the party seeking arbitration to apply to the court for an order compelling arbitration. *Hospitality Ventures of Coral Springs, L.C. v. American Arbitration Ass'n, Inc.,* 755 So.2d 159, 160 (Fla. 4th DCA 2000).

**8.** Unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that would cover the dispute at issue, then a stay pending arbitration should be granted. *Belke v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 518 F.Supp. 602, 606 (S.D.Fla.1981), *rev'd on other grounds in Belke v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 693 F.2d 1023 (11th Cir.1982).

**9.** The right to arbitrate under the FAA can be waived. *See Miller v. Drexel Burnham Lam-*

*bert, Inc.,* 791 F.2d 850, 853 (11th Cir.1986). A party claiming waiver of arbitration must show: (1) knowledge of an existing right to arbitration; and (2) active participation in litigation or other acts inconsistent with the right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts. *See Ivax Corp. v. B. Braun of America, Inc.,* 286 F.3d 1309, 1315–16 (11th Cir.2002) (court uses two part-test in determining whether a party has waived its right to arbitrate, under which it first decides if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right, and second, whether by doing so that party has in some way prejudiced the other party). Additionally, all doubts regarding waiver of right to arbitrate should be construed in favor of arbitration rather than against it. *See Marine Envtl. Partners, Inc. v. Johnson,* 863 So.2d 423, 426 (Fla. 4th DCA 2003).

Compel Binding Arbitration (**D.E. 4–1, 4–2 & 4–3**) is **GRANTED in part**. This action is **STAYED** and the parties are directed to arbitrate their claims.

3. On or before *December 1, 2004*, the parties shall file a Joint Status Report indicating the status of the arbitration proceedings and the expected date those proceedings will be concluded, except that if this matter is resolved prior to that date, the parties shall notify the Court within *ten (10) days* after such resolution.

4. Failure to comply with the provisions of this Order will result in a dismissal without further notice from the Court.

5. **The Clerk of Court is instructed to mark this case CLOSED for statistical purposes only**. This administrative order shall not prejudice the rights of the parties to this litigation.

6. All pending motions not otherwise ruled upon herein are **DENIED** as moot.